IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Crim. No. **PJM 00-424-7** |
| | * | |
| **JOHN EDDIE DILLARD,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

John Eddie Dillard has filed a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act, seeking a reduction of his incarceration to the statutory minimum twenty-five years. ECF No. 748. The Government has responded in opposition, ECF No. 750, and Dillard has replied, ECF No. 752. For the reasons that follow, Dillard's Motion is **DENIED**.

### I.

On June 28, 2001, a jury found Dillard guilty of two drug trafficking crimes: conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (Count 1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c) (Count 5). *See* ECF No. 321.

Dillard was a "middleman" in the scheme orchestrated by his cousin, Ronald Dillard. ECF No. 750, p.16. Ronald Dillard arranged for large quantities of cocaine – over 150 kilograms in total – to be transported from Miami to the Maryland suburbs of Washington, D.C. *See* Presentence Investigation Report ("PSR") ¶ 22.[1] Once the drugs were in the D.C. area, John Dillard resold the cocaine to users and other dealers, often out of the Threadz Sportz store that he and several of his co-defendants operated in Mount Rainier, Maryland. *Id.* ¶¶ 28-29. Dillard initially sold in

---

[1] John Dillard used other suppliers as well. *See* PSR ¶¶ 21, 23-24.

1

relatively small quantities, but by 1999, in multiple kilogram amounts. *Id.* ¶¶ 25-26. Witness testimony detailed Dillard's illegal transactions, some of which were also captured on intercepted phone calls and by Drug Enforcement Agency controlled purchases. *Id.* ¶¶ 22, 24, 25, 28. Dillard would "cook" the cocaine into crack. Indeed, trial testimony indicated that he developed notoriety for a special technique for doing so. *Id.* ¶ 20.

When he was arrested, in addition to a large sum of cash, an electronic scale, and police scanners, law enforcement discovered four guns in Dillard's possession, including a high-capacity AR-15 rifle with an obliterated serial number and, under the mattress upon which Dillard was found lying, a Mac-11 machine pistol with a home-made silencer. *Id.* ¶¶ 30, 103-04.

Dillard's lawless behavior did not end with his arrest. During trial, upon learning that a former customer of his was scheduled to testify on behalf of the Government, he purportedly threatened within earshot of the witness "it'll have to be murder, then." *Id.* ¶¶ 32, 38. Dillard also gave repeated demonstrably false testimony under oath on a number of key issues, stating that he had no knowledge his cousin's drug trafficking activities, had never sold more than 1/8 kilogram of cocaine, had never cooked powder cocaine into crack, and that the firearms seized from his backpack and under his mattress were not his. *Id.* ¶ 33. He also "suborned perjury" by allowing his godfather to falsely testify that the guns law enforcement found in Dillard's possession actually did not belong to Dillard and had been found in Dillard's grandfather's room. *Id.* ¶ 34.

In advance of sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") that calculated his offense level, criminal history score, and recommended guidelines range. The PSR attributed 150 kilograms of cocaine and more than 1.5 kilograms of cocaine base to the conspiracy, resulting in a base offense level for Dillard of 38. PSR ¶ 43. Pursuant to U.S.S.G. § 3C1.1., a two-level increase was warranted for Dillard's

obstruction of justice at trial, increasing his offense level to 40. *Id.* ¶ 47. He was deemed a Criminal History Category III, resulting in a guidelines range of imprisonment of 360 months to life as to Count 1. *Id.* ¶¶ 61, 74. Due to the 21 U.S.C. § 851 sentence enhancement predicated on Dillard's 1996 conviction for attempted possession with intent to distribute cocaine, the mandatory minimum term of imprisonment was doubled from 10 to 20 years of imprisonment. *Id.* ¶ 72. The period of incarceration as to Count 5 was also established by statute, with a minimum five year sentence to run consecutive to any other term of imprisonment imposed. *Id.*

On October 24, 2001, the Court sentenced Dillard to 420 months (35 years) imprisonment as to Count 1 and 60 months (5 years) consecutive as to Count 5. ECF No. 405. On January 14, 2015, pursuant to Amendment 750 of the Sentencing Guidelines, the Court reduced Dillard's sentence to 295 months imprisonment as to Count 1 (and left the 60-month sentence as to Count 5 intact). *See* ECF No. 688. As a result, his total sentence stands at 355 months. *Id.*

Dillard seeks a reduction of this sentence to the statutory minimum 300 months (25 years) of incarceration.[2]

## II.

Congress passed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"), to reduce the inequality in mandatory minimum sentences between drug trafficking offenses involving crack cocaine and powder cocaine. *See United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. Mar. 23, 2020). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), made those changes retroactive. *Id.* It permits courts, "on motion of the defendant... [to] impose a reduced sentence" for a criminal defendant (1) who was convicted of a "covered offense," *i.e.*, a "violation of a Federal criminal statute, the statutory penalties for which

---

[2] Dillard estimates that if his motion is granted that he would still serve approximately 15-18 additional months in prison. *See* ECF No. 748, pp. 2-3.

were modified by section 2 or 3 of the [FSA]"; (2) if the offense was committed before August 3, 2010; and (3) if the defendant did not already receive a reduction under the FSA or the First Step Act. *United States v. Robinson*, Cr. No. PJM-02-0227, 2019 WL 3867042 *2 (D. Md. Aug. 15, 2019).

Dillard committed the drug trafficking offenses for which he was found guilty before August 3, 2010 and has yet to receive a reduction under the FSA or the First Step Act. Whether his are "covered offenses" is the threshold question. *See Gravatt*, 953 F.3d at 260.

The jury convicted Dillard of conspiracy to distribute and possess with the intent to distribute both cocaine and cocaine base (commonly referred to as crack) pursuant to 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A)(ii) and § 841(b)(1)(B)(iii), the statutory penalties for which were modified in part by the FSA. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) ("All defendants who are serving sentences for violations of 21 U.S.C. §841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act."); *see also United States v. Gravatt*, 953 F.3d 258, 263-64 (4th Cir. 2020). The parties agree that following the Fourth Circuit's ruling in *Gravatt*, defendants are not excluded from the remedial goals of the First Step Act if their offense involved both forms of the drug. 953 F.3d at 264; *United States v. Byers*, 801 Fed.Appx. 134, 135 (Mem) (4th Cir. 2020).[3] As such, the Court finds Dillard's offenses are covered by the First Step Act and he is eligible for the relief he seeks.

---

[3] This is true even in cases like the present where the defendant trafficked in significantly greater amounts of powder cocaine than crack. *See Gravatt*, 953 F.3d at 261. Here, 150 kilograms of cocaine and 1.5 kilograms of cocaine base are attributed to Dillard's conspiracy. PSR ¶ 43.

Eligibility, however, entitles a defendant only to a substantive review of his motion on the merits; it does not compel a court to grant a sentence reduction. *See Gravatt*, 953 F.3d at 262. Thus, having found Dillard eligible, the Court turns to the merits of his petition.

### III.

In evaluating Dillard's motion on the merits, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). *See Wirsing*, 943 F.3d at 183. Those factors include (1) "the nature and circumstances of the offense;" (2) "the history and characteristics of the defendant;" (3) "the need for the sentence imposed;" and (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). The Court may also take into account Dillard's post-conviction behavior. *See United States v. Chambers*, 956 F.3d 667, 674-75 (4th Cir. 2020).

Noting the seriousness of his criminal activity, his false testimony, and the assertion "that he threatened a government witness," Dillard concedes that his case merits a lengthy sentence. ECF No. 752, p. 3. But he submits that his requested reduction to 25 years of imprisonment is appropriately severe to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a)(2). He asks the Court to compare his sentence to that which, he argues, would be imposed today. *See* 18 U.S.C. § 3553(a)(6). Referring the Court to national averages for crack trafficking offenses, he suggests that the Court would likely sentence him to a combined 25 years of incarceration if sentenced today. *See* ECF No. 748, p. 14.[4] Additionally, he emphasizes that he is now the only

---

[4] And, noting that Section 401 of First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, amended the type of drug offenses for which a § 851 sentence enhancement may be predicated upon, he argues that his prior conviction would no longer qualify and that the 20-year minimum sentence as to Count 1 would no longer apply.

member of the drug conspiracy overseen by his cousin, Ronald Dillard, to still be in prison. His requested sentence, he explains, is still twice that of Ronald Dillard.[5]

Supporting his claim that at 25-year sentence is sufficient pursuant to 18 U.S.C. § 3553(a), Dillard highlights his positive post-sentencing conduct. The BOP has never cited him for a disciplinary infraction of any kind throughout the entirety of his imprisonment and has placed him at the lowest-level security available at FCI Petersburg Low. *See* ECF No. 748-2. He has earned his GED, taken a broad array of courses, and works as a coveted UNICOR Shipping Clerk in the prison's warehouse. *See* ECF No. 748-3; ECF No. 748-5. These actions, he says, demonstrate that he is no longer the 24-year-old who went to trial; he avers that he is remorseful and changed. The Government, he notes, does not argue that he would be a danger to the community if released early, and he declares, he would not be. *See* 18 U.S.C. § 3553(a)(2).

The Government does, however, submit that the seriousness of his criminal conduct weighs against a sentence reduction. *See* 18 U.S.C. § 3553(a)(1). The Court agrees. Dillard was a key player, even as a middleman, in a large-scale cocaine trafficking scheme responsible for over 150 kilograms of drugs. He personally dealt in multiple kilogram amounts and maintained a small arsenal of high-powered weapons, including an assault rifle, machine gun, and semiautomatic handgun. *See* PSR ¶¶ 25, 30.

His present sentence is appropriate, the Government submits, particularly in light of how at trial he "flaunted the law." ECF No. 750, p. 17. Indeed he did. The Court hardly needs to proclaim that it is absolutely unacceptable to threaten the life of a witness. And the Court does not take lightly that Dillard's self-serving, incredible testimony on almost every major issue was sharply contradicted by witnesses, intercepted phone calls, or other evidence. *See* PSR ¶¶ 33, 46;

---

[5] The Court sentenced Ronald Dillard to 152 months incarceration after he plead guilty to conspiring to distribute and possess with intent to distribute cocaine and cocaine base. *See* ECF No. 366.

*see also United States v. Dunnigan*, 507 U.S. 87, 97 (1993) ("[a] perjuring defendant's willingness to frustrate judicial proceedings to avoid criminal liability suggests that the need for incapacitation and retribution is heightened").

Moreover, the Government says, given the quantity of drugs involved, plus an enhancement for actions which "willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution, or sentencing," U.S.S.G. § 3C1.1, plus his criminal history category of III, the applicable guidelines range, if he were sentenced today, would be 292 to 365 months. Dillard's 295-month sentence as to Count 1, it may be noted, is already at the low end of that range. *See* 18 U.S.C. § 3553(a)(6).

Taking all this into account, the Court finds Dillard's abhorrent behavior before and during trial cannot not be swept aside, even in light of his demonstrated growth while imprisoned. The Court finds that Dillard's current sentence of 355 months is "sufficient, but not greater than necessary" to accomplish the objectives of sentencing set forth in 18 U.S.C. § 3553(a)(2). Accordingly, his Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act is **DENIED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August 18, 2020**